# IN THE SUPREME COURT OF CALIFORNIA

EMILY WHEELER,

Petitioner,

v.

APPELLATE DIVISION OF THE SUPERIOR COURT OF LOS ANGELES COUNTY,

Respondent;

THE PEOPLE,

Real Party in Interest.

S272850

Second Appellate District, Division Three
B310024

Los Angeles County Superior Court
9CJ00315, BR054851

May 30, 2024

Justice Jenkins authored the opinion of the Court, in which Chief Justice Guerrero and Justices Corrigan, Liu, Kruger, Groban, and Evans concurred.

# WHEELER v. APPELLATE DIVISION OF SUPERIOR COURT

## S272850

Opinion of the Court by Jenkins, J.

Dismissals of criminal actions are permitted "in furtherance of justice." (Pen. Code, § 1385, subd. (a).)[1] We have held that trial courts evaluating an "in furtherance of justice" dismissal may consider a charged crime's characteristics. Here, we conclude the trial court did not err in considering, amongst other circumstances, defendant and petitioner Emily Wheeler's innocent state of mind when it dismissed misdemeanor charges the parties agree would impose strict liability and which were premised on municipal law that permitted noncriminal sanctions for the least culpable violators. We therefore reverse the judgment of the Court of Appeal, which concluded otherwise, and direct that the dismissal should stand.

---

[1] Subsequent statutory references are to the Penal Code unless otherwise noted.

## I. BACKGROUND

### A. Charges Against Defendant

In 2019, the City of Los Angeles, acting for the People of the State of California, issued a misdemeanor criminal complaint alleging unlicensed cannabis activity on property within city limits. The complaint charged defendant and petitioner Wheeler, the property owner, and her son, Aaron Wheeler, with various Los Angeles Municipal Code (Municipal Code) violations.

Counts 6 and 8 charged the Wheelers with violating two subdivisions of Municipal Code section 104.15,[2] one targeting "unlicensed Commercial Cannabis Activity"[3] and the other targeting "Unlawful Establishments," meaning individuals or entities engaged in such unlicensed activity.[4] (Mun. Code, § 104.15(a) & (b).) Count 6 charged a violation of subdivision (a)(1), which makes it unlawful "to establish, operate, or participate as an Employee, contractor, agent or volunteer, in any unlicensed Commercial Cannabis Activity in the City." (Mun. Code, § 104.15(a)(1).) This prohibition "include[s]

---

[2]  Municipal Code section 104.15 was enacted by City of Los Angeles Ordinance No. 185,343 in 2017.

[3]  " 'Commercial Cannabis Activity' includes the cultivation, possession, manufacture, distribution, processing, storing, laboratory testing, packaging, labeling, transportation, delivery or sale of Cannabis or Cannabis products in the City as provided for in Division 10 of the California Business and Professions Code and the California Code of Regulations, as currently defined or as may be amended." (Mun. Code, § 104.01(10).)

[4]  " 'Unlawful Establishment' means any Person engaged in Commercial Cannabis Activity if the Person does not have a City-issued Temporary Approval or License." (Mun. Code, § 104.01(41).)

renting, leasing to or otherwise allowing any unlicensed Commercial Cannabis Activity . . . to occupy or use any building or land." (Mun. Code, § 104.15(a)(3).) Count 8, in turn, charged a violation of subdivision (b), which makes it "unlawful to: [ ¶] 1. Own or operate an Unlawful Establishment; [¶] 2. Participate as an Employee, contractor, agent or volunteer or in any other capacity in an Unlawful Establishment; [¶] 3. Use any portion of any parcel of land as an Unlawful Establishment; or [¶] 4. Lease, rent to, or otherwise allow an Unlawful Establishment to occupy any portion of parcel of land." (Mun. Code, § 104.15(b).)

In addition to the counts under section 104.15, count 9 charged the Wheelers with violating Municipal Code section 12.21(A)(1)(a). This provision more generally prohibits, among other things, erecting, reconstructing, maintaining, or using or designing for use a structure or land without "applying for and securing all permits and licenses required by all laws and ordinances." (*Ibid.*)

Violators of Municipal Code section 104.15, whether breaching subdivision (a) or (b), "shall be guilty of a misdemeanor punishable by a fine of not more than $1,000 or by imprisonment in the County Jail for a period of not more than six months, or by both a fine and imprisonment." (Mun. Code, § 104.15(d).) However, violations "of this section by an Employee, contractor, agent or volunteer, who has no financial interest in the Unlawful Establishment, may be punishable by means of a citation issued under the City's Administrative Citation Enforcement Program." (*Ibid.*)[5] The citation system addresses the "need for an alternative method of enforcement for violations

---

[5]      This citation-authorizing provision was added by Los Angeles Ordinance No. 185,850, effective November 28, 2018.

of this Code," aside from criminal and civil penalties. (Mun. Code, § 11.2.01(a).)

Municipal Code section 12.21, in contrast to section 104.15, does not expressly assign criminality to its violation; however, a more general provision with broad sweep states "[e]very violation of this Code is punishable as a misdemeanor unless provision is otherwise made, and shall be punishable by a fine of not more than $1,000.00 or by imprisonment in the County Jail for a period of not more than six months, or by both a fine and imprisonment." (Mun. Code, § 11.00(m).) This general provision also allows violations to be "charged as an infraction" or "addressed through the use of an Administrative Citation." (*Ibid.*)

The criminal complaint in this action charged another defendant, Omar Quartez Brown, with the same offenses under Municipal Code sections 104.15 and 12.21 as the Wheelers. It also charged Brown, in count 5, with selling cannabis in violation of Health and Safety Code section 11360, subd. (a)(2), and, in count 7, with violating Municipal Code section 104.15(b)(2), which, like section 104.15(a)(1), prohibits participation in unlicensed or unapproved cannabis activities.[6]

## B. Dismissal Proceedings

After pleading not guilty to the charges against her, Wheeler filed a motion to dismiss them. The motion asserted the Municipal Code provisions underlying the charges were vague and overbroad. It also, as relevant here, referenced a court's authority under Penal Code section 1385, subdivision (a),

---

[6] Counts 1 through 4 of the complaint, which the People later characterized as a clerical error, were dismissed without objection.

"to dismiss an action on its own motion" in furtherance of justice. It "respectfully invite[d]" the trial court to dismiss the charges on that basis. Wheeler's papers stated facts favoring dismissal, including that, at age 85 and with a blemish-free record, she merely owned the premises at issue and lacked a "direct or even indirect connection" to or knowledge of the cannabis enterprise allegedly occurring there, which was "covert." Wheeler's attorney provided a statement in which he "declare[d] under penalty of perjury that" these facts favoring dismissal were "true and correct."

The People opposed dismissal. Regarding section 1385, the People argued the statute did not allow defense-originated motions to dismiss and that dismissal would not further justice. The People argued a section 1385 dismissal based on lack of knowledge would be "contrary" to the strict liability nature of the charged Municipal Code offenses and would impair the city's efforts to "mitigate the negative impacts" arising from the unregulated commercialization of cannabis. The People's opposition proffered factual allegations about the charged offenses derived from their investigation. In particular, the People explained that city police, responding to complaints about cannabis sales on Wheeler's property, had an informant purchase drugs from codefendant Brown. After confirming the absence of a cannabis license, the police returned to Wheeler's property and arrested Brown. The People did not set forth any facts disputing Wheeler's claimed lack of knowledge. Instead, the People argued that Wheeler had only offered mere "unsupported assertions," and "no evidence," of her claimed innocent mental state and good standing in the community.

At the motion hearing, Wheeler appeared in a wheelchair. In exploring the People's opposition to dismissal, the trial court

directed the following question to the People: "now, your position is that all Ms. Wheeler has done is be the owner of the property?" The People answered, "your honor, Ms. Wheeler is the owner of the property." The trial court then asked, "you're not suggesting that she has any contact with or any business position in running this illegal dispensary?" The People answered, "right."

The trial court denied Wheeler's motion for dismissal, agreeing with the People that she could not move for dismissal "in furtherance of justice" under section 1385. However, the trial court granted dismissal "on its own motion." (See *ibid.*) In doing so, it repeated it was acting "on the court's motion" and it "want[ed] to make that clear." The trial court articulated several reasons for the dismissal, mentioning not only matters such as Wheeler's age and exemplary record, but also the absence of anything "to suggest that she knows anything about this, other than the fact that she owns the property."

The People appealed to the appellate division of the superior court, asserting the trial court erred by favorably considering Wheeler's lack of knowledge, failing to consider the city's interests in enforcing its cannabis laws, and relying on claims about Wheeler's background and the alleged offense that were insufficiently supported by the evidence. The People also asserted that the trial court, though permitted to act on its own motion under section 1385 had improperly granted a defense motion to dismiss under the section. Wheeler, requesting

affirmance, argued the trial court's section 1385 dismissal was appropriate.[7]

The appellate division reversed the section 1385 dismissal. It first determined that the trial court had adequately considered the People's law enforcement interests and that the People's evidentiary concerns were unwarranted. Nevertheless, it concluded that the trial court erroneously viewed Wheeler's lack of knowledge as mitigating her culpability because the charged offenses imposed strict liability. The appellate division explained, "It would be reasonable to conclude that a person *having knowledge* that criminal activity is afoot in committing a strict liability crime is aggravating. But, since the legislative scheme requires no proof of knowledge for a conviction, the *lack of knowledge* of a person engaged in committing such an offense is not mitigating." According to the appellate division, the trial court's consideration of lack of knowledge under these circumstances amounted to an impermissible "disagreement with the law" or a "disapproval of the impact" of the law on defendant. Despite viewing the trial court's other reasons for dismissal as "proper," the appellate division reversed the dismissal and remanded given the seeming

---

[7] In addition, Wheeler argued for the first time that a state law prohibiting the knowing rental of premises for the purpose of unlawful drug activities (Health & Saf. Code, § 11366.5, subd. (a)) preempted the municipal criminal prohibitions the city had invoked against her. The appellate division, and the Court of Appeal after it, rejected this argument. Although our grant of review included this preemption issue, we express no opinion on it given our disposition, in which we remand for dismissal under section 1385, and in light of our prerogative to "not decide every issue the parties raise or the court specifies." (Cal. Rules of Court, rule 8.516(b)(3).)

centrality of Wheeler's lack of knowledge to the trial court. It "express[ed] no opinion whether, on remand, the court should again consider using its Penal Code section 1385 discretion, and taking into account only appropriate considerations, the court should dismiss the action." It also stated it had, in light of the contemplated remand, no need to address whether the court adequately acted on its own motion.

Wheeler petitioned the appellate division for rehearing or, in the alternative, to certify the case for discretionary transfer to the Court of Appeal "to secure uniformity of decision or to settle an important question of law." (Cal. Rules of Court, rule 8.1005(a)(1); see generally *Snukal v. Flightways Manufacturing, Inc.* (2000) 23 Cal.4th 754, 762–764 & fn. 2 [discussing this process in the context of rules and statutes applicable prior to unification of the municipal and superior courts].) She asserted that the appellate division erroneously embraced the "novel" legal theory that lack of knowledge could not be a dismissal factor under section 1385. Her requests were denied. Wheeler then asked the Court of Appeal to directly accept discretionary transfer pursuant to California Rules of Court, rule 8.1006. This request, too, was denied.

Thereafter, Wheeler, petitioned the Court of Appeal for a writ of mandate that would direct the appellate division to "set aside its opinion" and affirm the trial court's dismissal. After a summary denial, we granted review. (See generally *Randone v. Appellate Department* (1971) 5 Cal.3d 536, 542–543.) We transferred the case back to the Court of Appeal, instructing it to vacate its summary denial and issue an order to show cause, facilitating a written opinion on the scope of section 1385. The Court of Appeal ultimately affirmed the appellate division, agreeing that dismissal could not be premised on Wheeler's lack

8

of knowledge. (*Wheeler v. Appellate Division of Superior Court* (2021) 72 Cal.App.5th 824.) The Court of Appeal also agreed with the appellate division that remand to the trial court was appropriate for consideration of dismissal under appropriate factors. (*Id.* at p. 843.) We then granted review outright.

## II.  DISCUSSION

### A.  Penal Code Section 1385 and its Origins

The trial court's power to dismiss a criminal action "in furtherance of justice" has been "recognized by statute since the first session of the Legislature in 1850." (*People v. Williams* (1981) 30 Cal.3d 470, 478 (*Williams I*); see Stats. 1850, ch. 119, § 629, p. 323; see also Stats. 1851, ch. 29, § 597, p. 279.) Legislators at that first session borrowed dismissal provisions from a draft of the Field Code of Criminal Procedure prepared for the State of New York. (Kleps, *The Revision and Codification of California Statutes 1849–1953* (1954) 42 Cal. L.Rev. 766, 766, fn. 4; Commissioners on Practice and Pleadings, The Code of Criminal Procedure of the State of New York (1850) pp. 344–345 (Commissioners' Report); *People v. Douglass* (1983) 60 N.Y.2d 194, 202–204.) The Field Code's proposed dismissal provisions, sections 739 and 740, sought to abolish the practice of nolle prosequi, inherited from England, under which prosecutors had the prerogative to abandon a prosecution.[8] Instead, the code

---

[8]  See 16 The American and English Encyclopedia of Law (1891) page 713, for one definition of nolle prosequi in criminal prosecutions:  "A nolle prosequi in criminal proceedings is the voluntary withdrawal by the prosecuting authority of present proceedings on a particular bill or information. Many reasons may arise which make it desirable to enter it before trial, and the practice is usual after verdict to enter it upon objectionable counts

would authorize courts to dismiss in the furtherance of justice, either on the motion of a prosecutor or on their own motion. (Commissioners' Rep., at p. 343.)  The code's authors believed that without these innovations, courts would be "unable, no matter how unjust may be the continuance of the indictment against the defendant, to relieve him from that injustice." (*Ibid.*) California was the first state to adopt an "in furtherance of justice" dismissal statute.  New York itself followed in 1881, and, today, just shy of one-third of the states have such statutes. (*People v. Douglass*, *supra*, 60 N.Y.2d at pp. 202–204; Roberts, *Dismissals as Justice*, 69 Ala. L.Rev. 327, 332 & fn. 21 (2017) [collecting state statutes]; Wirenius, *Legal Developments: A Model of Discretion: New York's "Interests Of Justice" Dismissal Statute* (1984) 58 Alb. L.Rev. 175, 178.)

Penal Code section 1385, subdivision (a),[9] in language essentially unchanged since 1850, authorizes a trial judge, "either on motion of the court or upon the application of the prosecuting attorney, and in furtherance of justice, [to] order an action to be dismissed." (§ 1385, subd. (a); see *Williams I*, *supra*, 30 Cal.3d at p. 478 & fn. 5.)  The statute allows a court, postindictment, to "take[] charge of the prosecution, and act[] for the people," bestowing on the court "power to dismiss, as the

---

or parts of counts, so as to disencumber the record and confine the verdict to those which are good.  Nolle prosequi after verdict is sometimes used as a method for recording executive clemency."

[9]      The provision governing dismissals "in furtherance of justice" now resides in subdivision (a) of section 1385.  It was placed into a subdivision in 1986 (Stats. 1986, ch. 85, § 2, p. 211) and other provisions not at issue here were added later (*People v. Bonnetta* (2009) 46 Cal.4th 143, 151, fn. 4).  When we refer to section 1385 or quote cases that refer to section 1385, this indicates a reference to the provision now found in subdivision (a).

attorney-general in England holds the power to enter a *nolle prosequi*, by virtue of the office and the law." (*People v. More* (1887) 71 Cal. 546, 547; see *People v. Bonnetta, supra,* 46 Cal.4th 143, 149; see also § 1386 [abolishing nolle prosequi and stating prosecutors may not discontinue prosecution except pursuant to § 1385].) To prevent abuse of the dismissal power, the Legislature requires courts to specify the reasons for any dismissal in court minutes for public scrutiny. (*Bonnetta*, at pp. 149–150.) A dismissal without reasons is invalid. (*Ibid.*)

"[I]t is well established that a court may exercise its power to strike under section 1385 'before, during or after trial,' up to the time judgment is pronounced." (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 524, fn. 11 (*Romero*).) Although "the power to dismiss an action includes the lesser power to strike factual allegations relevant to sentencing, such as the allegation that a defendant has prior felony convictions" (*Id.* at p. 504), this case concerns the power to dismiss "an action" in full. A trial court has broad, though not absolute, discretion to dismiss under section 1385. (*Romero*, at p. 530.) On appeal, a reviewing court typically asks whether dismissal was an abuse of discretion. (*People v. Memro* (1995) 11 Cal.4th 786, 835–836, citing *People v. Superior Court* (*Howard*) (1968) 69 Cal.2d 491, 502 (*Howard*).) But the interpretation of a statute remains a question of law subject to de novo review. (*People v. Lewis* (2021) 11 Cal.5th 952, 961.)

## B. "In Furtherance of Justice" and Consideration of Culpability

Section 1385 broadly " 'permits dismissals in the interest of justice in any situation where the Legislature has not clearly evidenced a contrary intent.' " (*People v. Tirado* (2022) 12

Cal.5th 688, 696.) Yet the statutory requirement that a dismissal be "in furtherance of justice" still cabins a trial court's authority. (*People v. Orin* (1975) 13 Cal.3d 937, 945 (*Orin*).) "As the Legislature has provided no statutory definition of this [requirement], appellate courts have been faced with the task of establishing the boundaries of the judicial power conferred by the statute as cases have arisen challenging its exercise."[10] (*Orin*, at p. 945.) We have held that section 1385's reference to "in furtherance of justice" requires " 'consideration both of the constitutional rights of the defendant and the interests of society represented by the People.' " (*Orin*, at p. 945.) "At the very least, the reason for dismissal must be 'that which would motivate a reasonable judge." (*Ibid.*) "The basic ground involved, furtherance of justice, is the same whether the court

---

[10] In comparison, New York amended its "in furtherance of justice" dismissal statutes in the latter part of the 20th century to list a variety of pertinent factors. These are "(a) the seriousness and circumstances of the offense; [¶] (b) the extent of harm caused by the offense; [¶] (c) the evidence of guilt, whether admissible or inadmissible at trial; [¶] (d) the history, character and condition of the defendant; [¶] (e) any exceptionally serious misconduct of law enforcement personnel in the investigation, arrest and prosecution of the defendant; [¶] (f) the purpose and effect of imposing upon the defendant a sentence authorized for the offense; [¶] (g) the impact of a dismissal on the safety or welfare of the community; [¶] (h) the impact of a dismissal upon the confidence of the public in the criminal justice system; [¶] (i) where the court deems it appropriate, the attitude of the complainant or victim with respect to the motion; [¶] (j) any other relevant fact indicating that a judgment of conviction would serve no useful purpose." (N.Y. Crim. Proc. Law § 170.40 [governing misdemeanors and infractions]; accord, *id.*, § 210.40 [governing felonies]; see generally *People v. Rickert* (1983) 58 N.Y.2d 122, 127 [discussing the development of these laws and the then-recent amendments].)

acts on motion of the prosecution or its own motion . . . ."
(*Howard, supra*, 69 Cal.2d at p. 503.)

In our attempt to render section 1385's in-furtherance-of-justice requirement "more determinate," we have interpreted the term "justice" to refer to the justice "within" or "intrinsic" to the legal "scheme to which the defendant is subject." (*People v. Williams* (1998) 17 Cal.4th 148, 160–161 (*Williams II*).) To look outside the scheme would more greatly risk elevating idiosyncratic views of justice above the duly enacted laws of our chosen representatives. (*Ibid.*; see *People v. Wallace* (2004) 33 Cal.4th 738, 747 (*Wallace*).) "The scheme itself constitutes the 'letter' of the law. More than perhaps any other source it may also suggest its 'spirit.' For even when it does not declare its purpose in *ipsissimis verbis*, it indicates its objective through its scope and operative terms." (*Williams II*, at p. 160.)

To illustrate this limiting principle, courts asked to dismiss a prior conviction at sentencing that would significantly enhance punishment under California's three strikes law may not rely on factors extrinsic to that sentencing scheme, "such as the mere desire to ease court congestion" or "bare antipathy" for the three strikes law or the sentences it prescribes. (*Williams II, supra*, 17 Cal.4th at p. 161; see *Wallace, supra*, 33 Cal.4th at p. 747; see also *People v. Curtiss* (1970) 4 Cal.App.3d 123, 126.) Instead, sentencing courts consider factors intrinsic to that scheme, "as informed by generally applicable sentencing principles," such as the nature of the charged and prior offenses and the defendant's "background, character, and prospects." (*Williams II*, at p. 160.)

Here, we address not a sentencing scheme but "the statutory scheme which has been established for the prosecution

of crimes." (*Orin, supra,* 13 Cal.3d at p. 947.) In this context, we have noted the People's "legitimate interest in 'the fair prosecution of crimes properly alleged.' " (*Ibid.*) " ' "[A] dismissal which arbitrarily cuts those rights without a showing of detriment to the defendant is an abuse of discretion." ' " (*Ibid.*) Put another way, "[p]ermitting trial judges to make liberal use of section 1385 to avoid criminal prosecutions where probable cause exists to believe conviction is warranted would be contrary to the adversary nature of our criminal procedure as prescribed by the Legislature." (*Ibid.*) "Under ordinary circumstances, it would frustrate the orderly and effective operation of our criminal procedure as envisioned by the Legislature if without proper and adequate reason section 1385 were used to terminate the prosecution of defendants for crimes properly charged in accordance with legal procedure." (*Ibid.*) And yet, we have also recognized that discretionary dismissal under section 1385 operates independently of a "prosecutor's charging decisions," for "[a]ny decision to dismiss is necessarily made after the prosecutor has invoked the court's jurisdiction by filing criminal charges. '[O]nce the state is ready to present its case in a judicial setting, "the prosecutorial die has long since been cast." ' " (*Romero, supra,* 13 Cal.4th at p. 514, italics omitted.)

Moreover, evidence that a defendant is guilty of a charge, or even the rendering of a guilty verdict on that charge, does not preclude dismissal under section 1385. A "proper and adequate reason," as noted above, could make such dismissals appropriate, taking the case out of the "ordinary circumstances" applicable to properly charged crimes. (*Orin, supra,* 13 Cal.3d at p. 947.) "[A] section 1385 dismissal may not even 'involve a consideration of the merits of the cause' " and "often [is] not

based on the insufficiency of the evidence as a matter of law." (*People v. Hatch* (2000) 22 Cal.4th 260, 273.)[11] "Many cases might arise when in furtherance of justice we would be called upon to dismiss a good indictment." (*People v. March* (1856) 6 Cal. 543, 546.)[12]

Indeed, in *Howard, supra*, 69 Cal.2d 491, we addressed a court's power to dismiss a charge following a guilty verdict where the trial evidence, though in conflict, supported conviction. We said, "[i]f a trial judge is convinced that the only purpose to be served by a trial or a retrial is harassment of the defendant," that judge "should be permitted to dismiss notwithstanding the fact that there is sufficient evidence of guilt, however weak, to sustain a conviction on appeal." (*Id.* at p. 504.) We continued, "[t]he Legislature has given the trial court the power to dismiss under the broad standard of justice, and in view of the high caliber of our trial judges and their responsibility to the electorate we believe that recognition of such power in cases of conflicting evidence will not result in abuse but to the contrary believe that the due exercise of the power to dismiss in proper cases of conflicting evidence will further justice." (*Ibid.*) We then offered case-specific and

---

[11] Thus, it is well established that section 1385 dismissals are not generally construed as "an acquittal for legal insufficiency" of the evidence. (*People v. Hatch, supra*, 22 Cal.4th at p. 273.)

[12] Other Penal Code provisions allow dismissal for an indictment's failure to state an offense or for the absence of probable cause to believe a defendant has committed an offense. (See §§ 1004, subd. (4), 991, subd. (d).) Since the 1951 amendments to section 1385, it has provided that "[a] dismissal shall not be made for any cause that would be ground of demurrer to the accusatory pleading." (§ 1385, subd. (a); Stats. 1951, ch. 1674, § 141, p. 3857.)

defendant-specific factors for trial courts to consider when contemplating dismissal in these circumstances. (*Id.* at p. 505.) These factors include "the evidence indicative of guilt or innocence, the nature of the crime involved, the fact that the defendant has or has not been incarcerated in prison awaiting trial and the length of such incarceration, the possible harassment and burdens imposed upon the defendant by a retrial, and the likelihood, if any, that additional evidence will be presented upon a retrial. When the balance falls clearly in favor of the defendant, a trial court not only may but should exercise the powers granted . . . by the Legislature and grant a dismissal in the interests of justice." (*Ibid.*) Later, in *Orin*, we noted "[i]t has been said that some of these factors apply as well to dismissals before trial." (*Orin*, *supra*, 13 Cal.3d at p. 946, citing *People v. Ritchie* (1971) 17 Cal.App.3d 1098, 1105.) In *Orin*, we rejected a trial court's unexplained use of section 1385 to dismiss two properly charged criminal counts where there was probable cause of guilt "simply because defendant entered a plea of guilty to" another count. (*Orin*, at pp. 947–948.) However, in reaching our conclusion we nonetheless noted that dismissals in that context could be appropriate if a trial court's discretion were "reasonably exercised" and "in the furtherance of justice." (*Id.* at p. 949.)

In evaluating evidence of guilt and the nature of a defendant's criminal activity in the context of a section 1385 dismissal, a defendant's level of culpability is relevant. Indeed, " '[m]odern penal law is founded on moral culpability" and " '[o]ur collective conscience does not allow punishment where it cannot impose blame.' " (*People v. Roberts* (1992) 2 Cal.4th 271, 316.) We have remarked that many of the *Howard* factors are "mirror[ed]" by the mitigating circumstances set forth in the

California Rules of Court, rule 4.423, that might appropriately permit a trial court, at sentencing after a finding of guilt, to select and impose a lesser term of confinement. (*People v. Thomas* (1992) 4 Cal.4th 206, 212; see *id.* at pp. 211–212 [referring to the previous rule on this topic, Cal. Rules of Court, former rule 423].) These rule-based mitigating circumstances included matters tied to culpability, including "facts relating to the crime (such as defendant's minor role or laudable motive in the offense, the small likelihood of its recurrence, the presence of duress or coercion by others, or a mistaken claim of right by the defendant), and facts relating to the defendant (including [an] insignificant prior record, mental or physical condition reducing . . . culpability, or restitution or satisfactory performance on probation or parole)." (*Thomas*, at pp. 211–212; cf. Cal. Rules of Court, rule 4.423(a)(1) [a mitigating circumstance includes when "[t]he defendant was a passive participant or played a minor role in the crime"].)

Culpability has, in practice, played a role in our section 1385 cases considering evidence of guilt or the nature of an offense. In *Williams I*, *supra*, 30 Cal.3d 470, we held a trial court could dismiss, after trial in a murder case, an evidence-supported special circumstance finding that would have subjected a defendant to a mandatory life sentence without the possibility of parole. The trial court could consider the "facts of the offense," such as the defendant's reduced culpability and criminal intent as compared to codefendants, so that "the punishment [could] fit the crime as well as the perpetrator." (*Id.*

at p. 489; see *id.* at pp. 485, 489–490.)[13]  Likewise, in cases involving the previously mentioned three strikes law, "generally applicable sentencing principles," including culpability, may inform the trial court's discretion to dismiss prior strike convictions that would otherwise enhance a sentence.  (*Williams II, supra*, 17 Cal.4th at pp. 160–161.)  Thus, in *Williams II*, declining to dismiss a prior strike conviction was appropriate when the record "was devoid of mitigation."  (*Id.* at p. 163.)  In *Romero*, we noted that "evidence relevant to the defendant's culpability" would aid courts' decisionmaking regarding dismissal of a prior strike conviction.  (*Romero, supra*, 13 Cal.4th 497, 524, fn. 11.)  And in *People v. Vargas* (2014) 59 Cal.4th 635, 648, we explained courts sentencing under the three strikes law could employ section 1385 dismissals to align punishment under that law with the "relative moral blameworthiness" of prior offenses.

*Williams I, Williams II, Romero*, and *Vargas* considered culpability in the context of striking special circumstance or enhancements at sentencing, while *Howard* involved dismissal of an entire criminal charge after an initial trial with a guilty verdict but conflicting evidence.  Additionally, our Courts of Appeal have long envisioned dismissals of entire charges, including dismissals before trial as *Orin* permits, that account for individualized considerations including reduced culpability, despite indications of guilt.  (See *Orin, supra,* 13 Cal.3d at p. 946 [noting application of the *Howard* factors pretrial, before any

---

[13]  Almost a decade after *Williams I*, the electorate enacted section 1385.1, which states, "[n]otwithstanding Section 1385 or any other provision of law, a judge shall not strike or dismiss any special circumstance . . . ."  (§ 1385.1; *People v. Fuentes* (2016) 1 Cal.5th 218, 230, fn. 9.)

determination of guilt].)  For example, in *People v. Cina* (1974) 41 Cal.App.3d 136, the court suggested a trial court could consider, either before or after trial, dismissal of a marijuana cultivation charge when the defendant grew only three plants in a backyard garden, which the appellate court deemed "petty when viewed in the total context of drug trafficking."  (*Id.* at p. 140.)  In *Bosco v. Justice Court* (1978) 77 Cal.App.3d 179, the court stated that although a dental patient's spouse who ingests one of the patient's prescribed codeine tablets might violate a misdemeanor state drug law, "a judge would probably choose to dismiss the complaint in the interests of justice as being de minimis."  (*Id.* at p. 184.)  In *People v. Orabuena* (2004) 116 Cal.App.4th 84, the court asked a lower court, on remand, to look at individualized considerations and decide whether to dismiss a Vehicle Code misdemeanor conviction when dismissal would allow the defendant to access a diversion program to address convictions in the same proceeding for nonserious, nonviolent drug charges.  (*Id.* at pp. 88, 99.)  And more recently, in *People v. S.M.* (2017) 9 Cal.App.5th 210, the court affirmed dismissal of felony and misdemeanor fraud charges "allegedly arising out of the submission of a single false insurance claim to [an] automobile insurer in the amount of $360."  (*Id.* at p. 213.)  The dismissal was seen as permissible given the small amount at issue; the lack of actual loss to the insurer; defendant's age, lack of criminal history, and good behavior during the pendency of the case; and the impact a conviction would have on the defendant's professional career.  (*Id.* at pp. 218–219.)

In contrast with these decisions, two decisions from the Fourth District Court of Appeal, Division One — both from 1972 — reversed section 1385 dismissals of charges when guilt was uncontested and the trial court acted on concerns about the

law's impact on the particular defendant without due concern for the legal scheme at issue. The Court of Appeal expressed misgivings about the practice, fearing it could elevate "the rule of men above the rule of law" or "stultify [a] statutory scheme." (*People v. McAlonan* (1972) 22 Cal.App.3d 982, 987 (*McAlonan*); see *People v. Superior Court* (1972) 26 Cal.App.3d 668, 671 (*Montano*).) In *Orin*, we characterized decisions such as these as reflecting the appellate courts' "considerable opposition to the granting of dismissals under section 1385 in instances where the People are thereby prevented from prosecuting defendants for offenses of which there is probable cause to believe they are guilty as charged." (*Orin*, *supra*, 13 Cal.3d at pp. 946–947.)

But these Fourth District decisions stopped short of forbidding consideration of matters such as a defendant's culpability. *McAlonan*, *supra*, 22 Cal.App.3d at page 987, held that dismissal could not "be used for rehabilitative purposes" divorced from a consideration of the circumstances of the case, the law at issue, and the interests of both society and the defendant. The appellate court held it was error to dismiss a charge solely to obtain a preferred rehabilitative outcome, defendant's enlistment in the Navy, which the trial court believed a conviction would prevent. (*Id.* at pp. 984–985, 987.) Likewise, in *Montano*, *supra*, 26 Cal.App.3d at page 671, the appellate court rejected a dismissal made for "purely subjective" reasons to avoid the "heavy processes of the law" when there was no question as to the fairness of trial proceedings or defendant's guilt. The resolution reached in *McAlonan* and *Montano* turned on each appellate court's inability to identify a "proper and adequate reason" that might have weighed in favor of dismissal on the records presented. (See *Orin*, *supra*, 13 Cal.3d at p. 947.) Critically missing from the trial courts' brief statements of

reasons for dismissal in these cases, and thus escaping appellate review, was consideration of the charged conduct's relationship to the "scheme to which the defendant [was] subject" (*Williams II*, *supra*, 17 Cal.4th at p. 160), and, for instance, defendant's culpability in relation to that scheme.

Keeping with our decisions and the general approach of the appellate courts, we do not foreclose trial courts from considering among the dismissal considerations the nature of a charged offense, and specifically a defendant's minimal culpability, despite indications of guilt. Instead, we clarify that trial courts may, as appropriate, consider the nature of a charged offense and a defendant's minimal culpability in weighing all the considerations for and against dismissal in furtherance of justice under section 1385, subdivision (a), whether before or after trial.

Still, we hasten to reiterate the proper concern expressed in the Fourth District decisions, *McAlonan* and *Montano*, for the evenhanded rule of law in criminal prosecutions. Section 1385 dismissals must avoid subjective judgments, a "formless" justice, or the retooling of disfavored statutes based on antipathy for legislative choices. (*Williams II*, *supra*, 17 Cal.4th at p. 160; see *id.* at pp. 160–161.) We have abjured "liberal use" of the dismissal power to halt prosecutions where probable cause exists to proceed, and stated such prosecutions should, "[u]nder ordinary circumstances," proceed. (*Orin*, *supra*, 13 Cal.3d at p. 947.) We have also said the circumstances must be " 'extraordinary' " that would take a defendant " 'outside the

spirit of the very [statutory] scheme within which he squarely falls.' " (*People v. Carmony* (2004) 33 Cal.4th 367, 378.)[14]

Before concluding this discussion, we note New York courts have viewed that state's former[15] "in furtherance of justice" dismissal statute, New York Criminal Procedure Law section 671, as allowing culpability considerations. That section, as discussed, derived from the same proposed Field Code as section 1385. It permitted a New York court to, " 'either of its own motion, or upon the application of the district attorney, and in furtherance of justice, order an action, after indictment, to be dismissed.' " (*People v. Douglass*, *supra*, 60 N.Y.2d at p. 204; see *id.* at pp. 202–204.) When California statutes have shared text and origins with New York statutes in this way, we have previously found New York decisional law interpreting its statutes to be "persuasive" (*Estate of Howell* (1958) 50 Cal.2d 211, 215; *Estate of Willis* (1950) 34 Cal.2d 782, 787) and worthy of "great weight" (*Harrison v. Sutter S. R. Co.* (1897) 116 Cal. 156, 168), even if not controlling (*Milgate v. Wraith* (1942) 19 Cal.2d 297, 300).

---

[14] Prosecutors, in exercising their discretion, may also keep, as appropriate, some potential defendants with minimal culpability from facing criminal processes that would not further justice. "[N]umerous factors properly may enter into a prosecutor's [charging] decision[s] . . , such as a defendant's background and the severity of the crime, . . . so long as there is no showing that a defendant 'has been singled out deliberately for prosecution on the basis of some invidious criterion.' " (*People v. Wilkinson* (2004) 33 Cal.4th 821, 838–839.)

[15] As noted (fn. 10, *ante*), New York amended its "in furtherance of justice" dismissal statutes, which now articulate a variety of factors for courts to consider when weighing dismissal, including the circumstances of the offense.

New York's highest court stated that the power to dismiss an action in furtherance of justice under former section 671 " 'allow[ed] the letter of the law gracefully and charitably to succumb to the spirit of justice,' " "even to the disregard of legal or factual merit" of the prosecution. (*People v. Rickert*, *supra*, 58 N.Y.2d at p. 126.) It noted trial court decisions under that statute in which reduced culpability played a part. (*Id.* at p. 132, citing *People v. Davis* (Super.Ct. 1967) 286 N.Y.S.2d 396, 397 [college student charged with a felony for possessing one ounce of marijuana]; *People v. Campbell* (Super.Ct. 1966) 267 N.Y.S.2d 5, 6 [then-husband charged with abducting a woman two months before her 18th birthday when the two of them decided to drive out of state to wed].)

It might be possible, as have some courts in other states, to read the "furtherance of justice" statutes more narrowly as allowing dismissals only in the face of arbitrary or nefarious acts by the government. (See *State v. Brumage* (Iowa 1989) 435 N.W.2d 337, 340 [comparing more restrictive jurisprudence on the topic to New York's and California's].) But such a narrow reading would be inconsistent with the origins of section 1385, and, importantly, with our long-standing interpretation of that statute as permitting a range of considerations to be part of the dismissal calculus. In sum, and as explained above, we conclude that a defendant's reduced culpability may be a proper section 1385 dismissal consideration.

## C. Culpability and the City's Ordinances

To resolve this case, we need not address the full extent of a trial court's discretion to dismiss a charge under section 1385 based in part on a defendant's reduced culpability. Nor need we evaluate the correctness of each Court of Appeal decision

permitting a 1385 dismissal discussed in the previous section or fully align ourselves with the New York dismissal regime. This is in large part because the municipal enactments at issue here at most authorize *misdemeanor* prosecutions and are clear in contemplating *noncriminal* treatment for the least culpable violators such as Wheeler. As explained below, this affects how we view the consideration of Wheeler's mental state as part of the section 1385 dismissal inquiry.

Here, the People charged Wheeler with violating three Municipal Code provisions. Each provision reaches a wide range of conduct, some significantly more culpable than others. First, Municipal Code section 104.15(a) reaches those who "establish" or "operate" (*id.*, § 104.15(a)(1)) unlicensed commercial cannabis activity, but it also reaches, without regard to mental state, those who "participate" in that activity and those "renting, leasing to or otherwise allowing" (*id.*, § 104.15(a)(3)) that activity. Second, Municipal Code section 104.15(b) reaches at least as broad a swath of behavior, including, again without regard to mental state, those who own, operate, participate in, and lease to, or allow land use by, an unlicensed cannabis establishment. The third provision, Municipal Code section 12.21, falls under the city's comprehensive zoning plan (see *id.*, § 12.00) and prohibits essentially any building, and land development, or use that has been undertaken without "all permits and licenses required by all laws and ordinances."[16]

---

[16] The parties, before us, agree the ordinances create strict liability offenses with no mens rea requirements. We assume for purposes of our analysis that the parties are correct.

Each of these municipal code provisions subjects violators to the same maximum misdemeanor penalty of up to six months in county jail and up to a $1,000 fine. And, just as these provisions contemplate a wide range of culpability, they contemplate a correspondingly wide range of potential consequences, including, as noted, noncriminal sanctions. Though the municipal provisions authorize treatment of violators as misdemeanants, violators lacking a "financial interest" in the unlicensed cannabis establishment may face only "a citation issued under the City's Administrative Citation Enforcement Program." (Mun. Code, § 104.15(d); cf. *id.*, § 11.00(m) [allowing, more broadly, municipal code violations to be addressed as infractions or with noncriminal administrative citations]; *id.*, § 11.2.01 [noting the alternative, noncriminal nature of the citation process].) Thus the text of the municipal code itself contemplates that some violations pertaining to unlicensed cannabis activity would not merit invoking the criminal justice system and its sanctions.[17]

---

[17] Sometime after dismissal of Wheeler's charges, the Legislature conferred on trial courts discretion to offer defendants charged with misdemeanors a diversion program, which, if successfully completed, would result in dismissal. (See § 1001.95, subds. (a)–(c); Stats. 2020, ch. 334, § 1; *Islas v. Appellate Division of Superior Court* (2022) 78 Cal.App.5th 1104, 1110, fn. 1.) No party here argues the new diversion statute applies at this time; although the People state that, should we affirm and remand the case, the trial court would "have the opportunity to apply the judicial diversion statute." The diversion statute plainly offers a path to dismissal that is more roundabout than the path available under section 1385, subdivision (a). But it suggests the Legislature's ultimate comfort with not imposing criminal sanctions for some class of misdemeanor defendants. The People

Wheeler's alleged involvement in the crimes charged relates to her ownership of the property; she lacked "any contact with or any business position in running [the] illegal dispensary." We can readily envision myriad ways in which a defendant landlord might be viewed as more culpable while still lacking knowledge of unlicensed cannabis activity occurring on its property. For instance, a defendant could be aware its tenant sells cannabis at other locations. Or a defendant could be aware of cannabis sales at the defendant's property, perhaps within a storefront bearing signs advertising cannabis. Or a defendant might have some role in the business without being aware of its unlicensed status. The trial court could reasonably locate Wheeler's place at the bottom end of the spectrum of unknowing but violative conduct when considering "the nature of the crime" and the " 'evidence indicative of guilt or innocence.' " (*Orin*, *supra*, 13 Cal.3d at p. 946.) Where, as here, the laws at issue permit noncriminal treatment of the least culpable violators, a dismissal under section 1385 that references a defendant's minimal, bottom-of-the-spectrum culpability as one of the dismissal considerations does not, simply by doing so, go beyond the justice internal to the laws or evince bare antipathy for them.

According to the appellate division, the trial court should not have considered Wheeler's lack of knowledge at all because she was accused of a strict liability offense and her lack of knowledge, therefore, neither rendered her innocent nor was it "mitigating." But any circumstance of a *crime*, whether or not

---

do not argue the diversion statute in any way limits section 1385, subdivision (a)'s availability to dismiss misdemeanors, and in particular, Wheeler's.

necessary to prove an element of the crime, might render a defendant less culpable without rendering her innocent. And "mitigating" circumstances, to use the language of the appellate division, are ordinarily thought to include circumstances of the crime itself that, although not proving innocence, lessen culpability. (*People v. Gonzalez* (1990) 51 Cal.3d 1179, 1232 ["factor (a) of section 190.3 allows the sentencer to evaluate all aggravating and mitigating aspects of the capital crime itself" (italics omitted)]; Cal. Rules of Court, rule 4.423 ["Circumstances in mitigation include factors relating to the crime and factors relating to the defendant"]; *People v. Thomas*, *supra*, 4 Cal.4th at p. 212 [mitigation factors at sentencing mirror those at play in a section 1385 dismissal decision].) As noted in the previous section, dismissal despite indications of guilt does not inexorably equate with a bare antipathy for the law that would invalidate section 1385 relief. (See *ante*, pt. II.B.) Further, innocence, or failure of evidence on a crime's element, may be better addressed through nondiscretionary procedures. (See *ante*, fn. 12, noting statutes authorizing dismissal for failure to state an offense or for the absence of probable cause.)

Though Wheeler has not disputed her technical violations of the municipal laws, we hold that, given the nature of those laws, the trial court had discretion to consider the nature of the alleged violations and Wheeler's lack of knowledge in weighing all the considerations for and against dismissal in furtherance of justice under section 1385.

## D. Remaining Matters

The People advance additional arguments against dismissal. First, they argue that even if the trial court *could*

consider Wheeler's lack of knowledge in the exercise of its discretion, the appellate division's reversal of the dismissal should stand because "[t]here was no substantial evidence to support the assertion [Wheeler] lacked knowledge of the unlicensed commercial cannabis activity on her property, and the trial court's subsequent dismissal on that basis was an abuse of discretion." In particular, the People fault the trial court's reliance on sworn representations *from defense counsel*, rather than from Wheeler herself, regarding her mental state. Wheeler responds that the People forfeited this argument by not objecting to the materials before the court and by conceding Wheeler's lack of knowledge.

Our view of the record better coincides with Wheeler's. The People's written opposition to Wheeler's dismissal invitation did not alert the court to specific evidentiary concerns to her asserted lack of knowledge or offer contradictory facts to rebut Wheeler's contention the dispensary's operation was "covert." Rather, the People argued Wheeler "has presented <u>no evidence</u>" and "simply makes a number of unsupported assertions." The People continued, "there is no evidence that she had no connection to the illegal cannabis business; and no evidence that she did not know that the activity was occurring on her property." Later, at the hearing where the trial court granted dismissal on its own motion, the court cited Wheeler's lack of any knowledge as a factor favoring dismissal. Significantly, the People offered no challenge to that assertion nor any further contention regarding Wheeler's mental state. Nor did the People request an opportunity to test Wheeler's claims. Instead, despite lodging other objections to the court's dismissal, the People conceded that Wheeler was nothing more than a property owner and the People were "not suggesting she

has any contact with or any business position in running [the] illegal dispensary."

A "finding shall not be set aside, nor shall [a] judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless . . . [¶] . . . [t]here appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion." (Evid. Code, § 353, subd. (a).) " ' " 'Specificity is required both to enable the court to make an informed ruling on the . . . objection and to enable the party proffering the evidence to cure the defect in the evidence.' " ' " (*People v. Jones* (2013) 57 Cal.4th 899, 977.) " '[T]he objection must be made in such a way as to alert the trial court to the nature of the anticipated evidence and the basis on which exclusion is sought, and to afford the [party offering evidence] an opportunity to establish its admissibility.' " (*People v. Partida* (2005) 37 Cal.4th 428, 435.) A generic objection that fails to specify particular grounds for exclusion is insufficient. (*People v. Rundle* (2008) 43 Cal.4th 76, 115, overruled on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390.) Even a "bare reference" to a specific objection may fall short. (*People v. Alvarez* (1996) 14 Cal.4th 155, 186.)

Although a party may challenge the sufficiency of the evidence supporting a trial court's ruling for the first time on appeal (see *People v. Butler* (2003) 31 Cal.4th 1119, 1126), that party may not, under the guise of a substantial evidence challenge, newly contest what materials the trial court should have considered. "[E]vidence which is admitted in the trial court without objection, although incompetent, should be considered in support of that court's action [citations], and objection may not be first raised at the appellate level." (*Estate of Fraysher*

(1956) 47 Cal.2d 131, 135.) " ' "[I]ncompetent testimony . . . if received without objection takes on the attributes of competent proof when considered upon the question of sufficiency of the evidence to support a finding." ' " (*People v. Panah* (2005) 35 Cal.4th 395, 476; accord, *People v. Pierce* (1979) 24 Cal.3d 199, 206, fn. 3.) We also keep in mind that, when a defendant invites dismissal under section 1385, the trial court "must consider evidence offered by the defendant in support of his assertion that the dismissal would be in furtherance of justice." (*Rockwell v. Superior Court* (1976) 18 Cal.3d 420, 441–442.)

In spite of the People's repeated claim in their written opposition that there was "no evidence," their pleading offered neither a specific objection to particular evidence nor an alternative version of facts for the trial court to consider. In addition, at the hearing when the trial court announced its intention to dismiss on its own motion, citing Wheeler's lack of any knowledge as a factor, the People offered no evidentiary objection. To the contrary, as noted above, the People agreed with the court's statement regarding Wheeler's lack of any knowledge regarding the dispensary.

On this record, we doubt the People sufficiently objected to the factual basis underlying the trial court's own dismissal motion. But even assuming the trial court erred by considering counsel's sworn representations about Wheeler's mental state (see *In re Zeth S.* (2003) 31 Cal.4th 396, 413, fn. 11) — a question we need not decide — the People's concession regarding Wheeler's asserted lack of any knowledge renders any error harmless (see *People v. Morris* (1991) 53 Cal.3d 152, 198, disapproved on other grounds by *People v. Stansbury* (1995) 9 Cal.4th 824, 830). Given the People's ultimate willingness to concede, without reservation or qualification, Wheeler's lack of

any contact whatsoever with the dispensary, we see no prejudice in the trial court's assumptions regarding her mental state.[18]

Finally, and for the sake of concluding this case, we consider an issue the People raised in the appellate division that the court expressly left unresolved: Whether the trial court failed to act sufficiently on its own motion in light of Wheeler's initiating the request for dismissal through a written pleading styled as a "motion." (§ 1385, subd. (a) [allowing dismissal "on motion of the court or upon the application of the prosecuting attorney"].) Wheeler did submit a dismissal request, but the request "invite[d]" court action. The trial court expressly denied Wheeler's request and twice stated it was acting on its own motion and wanted "to make that clear." We have previously deemed requests such as Wheeler's as a means of inviting trial court action. (*People v. Carmony*, *supra*, 33 Cal.4th at p. 375 ["A defendant has no right to make a motion, and the trial court has no obligation to make a ruling, under section 1385. But [a defendant] does have the right to 'invite the court to exercise its power by an application . . . and the court must consider evidence offered by the defendant . . . .' "]; *People v. Brooks* (1980)

---

[18] Our conclusions regarding the evidentiary record here should not be read as an endorsement of off-the-cuff pretrial dismissals based on information that subsequent evidence may prove incomplete or inaccurate. We caution, as we have before, that "prior to the conclusion of the trial there is always the possibility that in the absence of dismissal more evidence may be received." (*Howard*, *supra*, 69 Cal.2d at p. 503.) After trial, the court "has heard the evidence relevant to the defendant's culpability and, thus, is better prepared to decide whether the interests of justice" favor dismissal. (*Romero*, *supra*, 13 Cal.4th at p. 524, fn. 11; see *People v. Fretwell* (1970) 8 Cal.App.3d Supp. 37, 41; *People v. Gonzales* (1965) 235 Cal.App.2d Supp. 887, 891.)

26 Cal.3d 471, 475, fn. 2 [deeming a defendant's motion as a suggestion that the court take independent action]; *Rockwell v. Superior Court, supra,* 18 Cal.3d 420, 441 ["a defendant may invite the court to exercise its power by an application"].) Here, the record clearly shows the trial court sufficiently acted on its own accord in dismissing the action against Wheeler pursuant to section 1385.

## III. DISPOSITION

Because the trial court had discretion to consider Wheeler's lack of knowledge under section 1385, we reverse the Court of Appeal's judgment denying the petition for writ of mandate. Also, given the appellate division's thorough opinion, specifying which issues it was resolving, it is clear that court found fault solely with the trial court's dismissal under section 1385 insofar as it rested on Wheeler's lack of knowledge. In the interests of judicial economy and for the sake of concluding this case, we have resolved the one outstanding issue related to section 1385 that the People brought before the appellate division and which that court identified in its opinion — whether the trial court acted sufficiently of its own accord. In this instance, and given the posture of this case, we conclude, without opining on any other issues the lower court decisions might implicate, that the trial court's dismissal order should stand. Accordingly, we remand to the Court of Appeal with instructions to issue a writ of mandate that directs the appellate

division to set aside its ruling and to instead issue a ruling affirming dismissal.

**JENKINS, J.**

**We Concur:**

**GUERRERO, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**
**EVANS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  Wheeler v. Appellate Division of Superior Court

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 72 Cal.App.5th 824
**Review Granted (unpublished)**
**Rehearing Granted**

**Opinion No.** S272850
**Date Filed:** May 30, 2024

**Court:**  Superior
**County:**  Los Angeles
**Commissioner:**  H. Elizabeth Harris

**Counsel:**

Erika C. Anzoategui, Alternate Public Defender, Reid S. Honjiyo, Brock Hammond, Alvin Yu and Megan N. Gallow, Deputy Alternate Public Defenders, for Petitioner.

Ricardo D. Garcia, Public Defender (Los Angeles), Albert J. Menaster, Head Deputy Public Defender, and Nick Stewart-Oaten, Deputy Public Defender, for the California Public Defenders Association and Law Offices of the Public Defender as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Michael N. Feuer and Hydee Feldstein Soto, City Attorneys, Kent J. Bullard, Assistant City Attorney, Meredith A. McKittrick, Hannah M. Barker, Sydney M. Mehringer, John R. Prosser and Zachary T. Fanselow, Deputy City Attorneys, for Real Party in Interest.

Michael N. Feuer, City Attorney (Los Angeles), David J. Michaelson, Chief Assistant City Attorney, Taylor C. Wagniere and Kabir Chopra,

Deputy City Attorneys, for the Los Angeles Department of Cannabis Regulation as Amicus Curiae on behalf of Real Party in Interest.

Susana Alcala Wood and David S. Kim, City Attorneys (Sacramento), for City of Sacramento as Amicus Curiae on behalf of Real Party in Interest.

Best Best & Krieger, Jeffrey V. Dunn and Carl C. Jones for League of California Cities and California State Association of Counties as Amici Curiae on behalf of Real Party in Interest.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Megan N. Gallow
Deputy Alternate Public Defender
210 West Temple Street, 18th Floor
Los Angeles, CA 90012
(213) 893-1074

Zachary T. Fanselow
Deputy City Attorney
200 North Main Street, Suite 916
Los Angeles, CA 90012
(213) 473-6900